UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
                                        :

SAROJA SINGA,                       :    **MEMORANDUM**
                                          :    <u>**DECISION AND ORDER**</u>

                    Plaintiff,    :

                                          :    17-cv-4482 (BMC)

            - against -        :

CORIZON HEALTH, INC.,         :

                                          :

                  Defendant.    :

---------------------------------------------------------- X

**COGAN**, District Judge.

       Plaintiff Saroja Singa brings this national-origin employment-discrimination case under Title VII and state and local law, alleging that she was discriminated against, subjected to a hostile work environment, and retaliated against for complaining about the alleged discrimination.[1]  Defendant Corizon Health, Inc., has moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to plead sufficient facts to state a claim in her amended complaint.  With respect to her federal and state claims, plaintiff has not stated a claim, and those claims are therefore dismissed.  I decline to exercise subject-matter jurisdiction over plaintiff's remaining claims under New York City law.

## SUMMARY OF AMENDED COMPLAINT

       The arguably factual and non-conclusory allegations of the amended complaint are as follows:  Plaintiff is a physician of Indian descent.  She began working for defendant as a doctor

---

[1] The amended complaint also attempted to plead a sex-discrimination claim, but plaintiff has abandoned that claim in opposing defendant's motion to dismiss.

in 2001, when defendant took over the contract for supplying medical services at Rikers Island (presumably with the New York City Department of Corrections, although that is not alleged). Before then, plaintiff had worked in the same capacity at Rikers Island, but the prior contractor (her prior employer) was St. Barnabas Hospital.

Plaintiff had no problems until 2011, when defendant adopted a new computer system for maintaining medical records. Before plaintiff could complete her training on the new system, as all medical staff were required to do, she was transferred to the Communicable Disease Unit ("CDU"). The CDU is a highly desired assignment for Rikers Island staff physicians.

Plaintiff's supervisor in the CDU was Dr. Aung (first name unknown), who is of Chinese-Burmese descent. On plaintiff's first day in the CDU, Dr. Aung ignored her when she greeted him. After joining the CDU, plaintiff was placed on a performance improvement plan for the new computer program. Plaintiff did not complete the training for the new computer system under Dr. Aung during her first six months, but she eventually completed the training in only six hours under another supervisor.

There were other Chinese-speaking personnel in the CDU, and Dr. Aung would speak to them in Chinese, which plaintiff did not understand. From 2011 to 2015, Dr. Aung gave plaintiff bad write-ups that she feels she did not deserve. (They are described in some detail in the amended complaint.). Some of these write-ups were rescinded when plaintiff proved to Dr. Aung that he was wrong. On one occasion, plaintiff was written up for prescribing Tylenol and Naprosyn for a patient; another doctor, Dr. Maungoo, who is of Chinese-Burmese descent, had previously made the same prescription for the patient, but was not written up. On another occasion, Dr. Maungoo replaced an oral methadone prescription with injectable methadone, which would have threatened the patient's life had nurses not caught the error. Dr. Aung did not

write up Dr. Maungoo for this mistake. On another occasion, plaintiff was written up for ordering x-rays for a patient; Dr. Aung rescinded the write-up when plaintiff showed that she had not ordered the x-rays, but Dr. Aung did not write up the (unnamed) Chinese-Burmese doctor who had ordered them.

On one occasion, plaintiff was assigned to four different units in an 8-hour shift (this is apparently called "floating," and is allegedly dangerous because each unit is managed differently with slightly different procedures), which did not happen to any other doctors. On two occasions, plaintiff's assigned shift was reassigned to Dr. Win (first name unknown), who is of Chinese-Burmese descent, and plaintiff had to float. On many (unspecified) occasions, plaintiff had to float for more than half of her weekly shift, and sometimes in the middle of her shift.

Plaintiff repeatedly requested overtime work, which Dr. Aung denied, but gave to (unnamed) physicians of Chinese-Burmese descent. One such doctor was able to double his original shifts, and Dr. Maungoo and Dr. Win received overtime on a weekly basis.

Dr. Aung did not permit plaintiff to use his office. Other (unnamed) non-Indian doctors were allowed to use his office.

Plaintiff made several complaints that Dr. Aung was giving (unspecified) preferential treatment to Burmese doctors. The first was on March 21, 2014, sent to "management." On June 28, 2015, plaintiff sent an email complaining "of the above discriminatory treatment," again to "management." On August 2, 2015, she complained to Dr. Cintron (first name and position unknown) that Dr. Aung was denying overtime to doctors who were not of Chinese-Burmese descent. In response to this last complaint, defendant's Department of Human Resources scheduled a meeting between plaintiff, Dr. Aung, and Dr. Aung's (unnamed) supervisors. At the

meeting, the supervisors "actually stood up," and walked out, saying that plaintiff was "picking on" Dr. Aung. No action came of the meeting.

Defendant's contract with the Department of Corrections ended on December 20, 2015. A new contractor (unnamed, but apparently the New York City Health & Hospitals Corporation) took over the medical-services contract at Rikers Island. Most of defendant's workers at Riker's Island were re-hired by the new provider, but plaintiff was not one of them.[2]

## DISCUSSION

Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), require a plaintiff seeking to avoid dismissal to plead factual allegations in her complaint sufficient to raise a right to relief above the speculative level. See also Brown v. Daikin America, Inc., 756 F.3d 219, 228 n.10 (2d Cir. 2014). A complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570); see also Iqbal, 556 U.S. at 678 (same).

To apply that standard, the court accepts as true all well-pleaded factual allegations, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678. If the court can infer no more than "the mere possibility of misconduct" from the factual averments, id. at 679, or if, in other words, the well-pleaded allegations of the Complaint have not "nudged [the] claims across the line from conceivable to plausible," dismissal is appropriate, Twombly, 550 U.S. at 570.

---

[2] Attached to plaintiff's opposition to the motion to dismiss is a newspaper article discussing the termination of defendant's contract with Riker's Island. This newspaper article is not properly submitted on a Rule 12(b)(6) motion, and in any event, adds nothing to the analysis.

# I.       Hostile-Work-Environment Claims under Title VII and State Law

To state a hostile-work-environment claim under Title VII, 42 U.S.C. § 2000e, or New York State Human Rights Law, New York Executive Law § 290-301, a plaintiff must plead facts showing that her workplace is "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citation omitted) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)).  The plaintiff must also show "either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)), superseded on other grounds by N.Y.C. Local L. No. 85.

There is not a single fact in the amended complaint alleging the kind of hostility required by the caselaw.  Plaintiff does not allege that she suffered racial epithets, disparaging remarks, or insults delivered in front of co-workers, and certainly does not allege any physical confrontations, or degrading or humiliating conduct.  See Alfano v. Costello, 294 F.3d 365, 380 (2d Cir. 2002) (collecting cases); see also Petrosino v. Bell Atl., 385 F.3d 210, 223 (2d Cir. 2004).

The closest that plaintiff gets to a hostile-work-environment claim is that Dr. Aung was rude to her by not greeting her on her first day.  That is far from sufficient.

As shown below, if plaintiff has any claim at all, it is a discrimination claim for disparate treatment.  She cannot dress up that claim with the phrase "hostile work environment" and thereby create a new claim for relief.  Her hostile-work-environment claim is dismissed.

## II.  Discrimination Claims under Title VII and State Law

For a complaint asserting a discrimination claim, "[t]he <u>Iqbal</u> plausibility standard applies in conjunction with employment discrimination pleading standards."  <u>Jackson v. NYS Dep't of Labor</u>, 709 F. Supp. 2d 218, 223-24 (S.D.N.Y. 2010) (citation omitted).  Such complaints "need not allege 'specific facts establishing a prima facie case of discrimination' . . . to survive a motion to dismiss."  <u>Boykin v. KeyCorp</u>, 521 F.3d 202, 212 (2d Cir. 2008) (citation omitted) (quoting <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 508 (2002)).  Rather, these complaints need only "include a short and plain statement of the claim . . . . [which] 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  <u>Swierkiewicz</u>, 534 U.S. at 512 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

"[T]he <u>Swierkiewicz</u> holding applies with equal force to any claim . . . that the <u>McDonnell Douglas</u> framework covers," including claims of disparate treatment, and retains its vitality in the wake of <u>Twombly</u> and <u>Iqbal</u>.  <u>Boykin</u>, 521 F.3d at 213-14 (quoting <u>Williams v. N.Y.C. Hous. Auth.</u>, 458 F.3d 67, 72 (2d Cir. 2006) (per curiam)).  There is thus no requirement that a plaintiff plead all of the elements of a *prima facie* case to survive a motion to dismiss under Rule 12(b)(6).  Nevertheless, a plaintiff must plausibly allege facts showing that the employer took an adverse action against her and that her race, color, religion, sex, or national origin was a motivating factor in the adverse employment decision.  <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 86 (2d Cir. 2015).

Plaintiff's opposition to the motion lists four actions that she contends constitute adverse employment actions:  (1) failing to train her on the new computer system; (2) placing her in a performance improvement plan; (3) imposing wrongful disciplinary write-ups; and (4)

wrongfully terminating her.[3]  The first three allegedly adverse employment actions are not "adverse" as a matter of law, and, as to her termination, plaintiff has adequately pleaded causation.

As to the alleged adverse actions relating to the new computer system, the amended complaint alleges that plaintiff "was placed on a performance improvement plan" for the new computer program, and that she eventually "completed the training in its entirety successfully in six hours" under a different supervisor.  I see no harm to plaintiff based on her own allegations, and therefore no foul.  She received instruction in the computer program and she completed it.  If she meant to allege that her delay in completing the training somehow cost her money, there are no such allegations.

Next, disciplinary write-ups or negative evaluations are not adverse actions sufficient to support a discrimination claim unless they affect the employee's terms and conditions of employment (*e.g.*, reducing wages, disqualifying plaintiff from a promotion opportunity, or leading to demotion or termination).  See Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008).  Here, plaintiff does not allege that the write-ups affected her pay, led to her demotion, or anything similar.  Her employer provided a grievance process for obtaining redress, and, indeed, the amended complaint recites several examples where Dr. Aung rescinded disciplinary write-ups that he imposed incorrectly.

As far as plaintiff's "termination," although it is obviously an adverse employment action, the amended complaint presents a fatal causation flaw.  The amended complaint makes

---

[3] The amended complaint also alleges denial of overtime opportunities, which could be an adverse employment action.  But in opposing the motion to dismiss, plaintiff does not cite denial of overtime as an adverse action; she cites the conferral of overtime on Chinese-Burmese doctors as discriminatory preferential treatment.  The Court therefore deems plaintiff to have abandoned any claim based on denial of overtime as an adverse action.  See Jackson v. Fed. Exp., 766 F.3d 189, 196 (2d Cir. 2014).

clear that plaintiff's dismissal from defendant's employ could not possibly have been on the basis of her national origin – defendant's contract with the Department of Corrections ended, and everyone, of every national origin, was terminated. The amended complaint itself thereby conclusively refutes any claim that her termination or anyone else's could have been motivated in any part by national-origin discrimination.

Plaintiff's amended complaint also asserts that she was terminated "[d]ue to the undue amount of negative and falsified discipline she received from Dr. Aung." But she does not allege any facts that would tend to show that allegation, and even if she did, there are serious proximate-cause problems that restrain her theory from crossing the line from "conceivable" to "plausible." There could have been all kinds of reasons why she was not hired by the new medical-care provider. The closest plaintiff comes to linking Dr. Aung and the new provider's decision not to hire her is when she advances a conclusion that "upon information and belief, the [defendant's] supervisors were responsible, prior to transfer of Riker's Island to the new contractor, for declining to continue [plaintiff's] employment . . . ." Alleging something "upon information and belief" does not suffice to allege a fact under Iqbal and Twombly unless plaintiff can point to some facts that make the allegations more than pure speculation. See Munoz-Nagel v. Guess, Inc., No. 12-CV-1312, 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013). Plaintiff has not pointed to any such facts; her allegation is just a conclusion, without factual support. This is particularly true because the only individual employed by defendant about whom plaintiff complains is Dr. Aung, and even her conclusory theory ascribes no role to him in deciding who the new provider would hire.

It is worth noting that defendant, a major corporation, did not go out of business when it gave up the Rikers Island contract. However, it does not employ any of the people whom it

previously employed at Rikers' Island; it terminated them all at the same time. Plaintiff therefore cannot plausibly allege that *defendant* terminated her based on her national origin.

Accordingly, plaintiff has failed to state a claim for national-origin discrimination.

### III.    Retaliation Claims under Title VII and State Law

Retaliation is actionable under Title VII when the plaintiff "engaged in a protected activity, such as complaining about [national origin] discrimination" and, as a result, her employer took an adverse action in retaliation. See Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse [retaliatory] action; and (4) a causal connection between the protected activity and the adverse employment action." Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (quoting Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)). As noted above, although a plaintiff need not establish a *prima facie* case to survive a motion to dismiss, "the court should still consider the elements of a *prima facie* case of retaliation in making a determination of whether a plaintiff's complaint gives a defendant fair notice of the grounds of his claim." Corbett v. Napolitano, 897 F. Supp. 2d 96, 111 (E.D.N.Y. 2012)

Plaintiff's retaliation claims suffer from one of the same deficiencies as her discrimination claims – there is no causation between her protected activity and the only employment action that she alleges to be adverse. Assuming, *arguendo*, that her complaints to management (assuming Dr. Cintron was a manager) on March 21, 2014, and June 28 and August 2, 2015 constituted protected activity (although she gives little description of these complaints), the only event that she attempts to tie to them is that defendant terminated her employment nearly five months later. To state a retaliation claim, the adverse employment action has to be in

response to the protected activity.  But, as noted above, defendant terminated everyone's employment, not just plaintiff's, and there are no facts alleged which would tend to show that defendant actually had any role in determining who the new Rikers Island contractor would hire.  Thus, plaintiff has failed to state a claim for retaliation.

## IV.     Claims under New York City Law

I have addressed plaintiff's claims under New York State Human Rights Law above in conjunction with her claims under the Title VII, because the requirements for pleading a claim under both statutes are the same.  See Soloviev v. Goldstein, 104 F. Supp. 3d 232, 246 (E.D.N.Y. 2015).  However, plaintiff's claims under New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, have different elements and standards of proof, and they are therefore not disposed of by the rulings above.

But having dismissed all of plaintiff's federal and state claims, I decline to exercise jurisdiction over plaintiff's claims under New York City law.  Under 28 U.S.C. § 1367(c)(3), a district court is permitted to "decline to exercise supplemental jurisdiction over a claim" if the district court "has dismissed all claims over which it has original jurisdiction."  Indeed, the Supreme Court has directed that, except in unusual circumstances, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). There are no circumstances justifying the Court's retention of non-federal claims in this case. Accordingly, plaintiff's New York City claims are dismissed without prejudice.

## CONCLUSION

Defendant's motion to dismiss is granted. The Clerk is directed to enter judgment, dismissing plaintiff's federal and state claims with prejudice, and her New York City claims without prejudice.

**SO ORDERED.**

_____
                                                                    U.S.D.J.

Dated: Brooklyn, New York
        January 8, 2018